UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
Juan Alvarez, in his individual capacity          :
and on behalf of others similarly situated,        :
                                                                    :
                          Plaintiff,                      :          **REPORT AND**
                                                                    :          **RECOMMENDATION**
                          -against-                        :
                                                                    :          16 Civ. 5337 (CBA) (VMS)
Sterling Portfolio Investment, LP,                 :
Sterling Portfolio 189 LP,                            :
Slopes Spaces of Sterling Inc.,                     :
Harvey Stashower, an individual                   :
Jerry Kessler, an individual,                         :
                                                                    :
                          Defendants.                    :
-------------------------------------------------------- x

**Scanlon, Vera M., United States Magistrate Judge:**

Plaintiff Juan Alvarez ("Plaintiff") brings this action pursuant to the Fair Labor Standards

Act, 29 U.S.C. §§ 201-219 ("FLSA"), and the New York Labor Law, N.Y. Lab. L. §§ 650-663.

Compl., ECF No. 1.  Plaintiff names as defendants Sterling Portfolio Investment, LP; Sterling

Portfolio 189 LP; Slopes Spaces of Sterling Inc.; Harvey Stashower and Jerry Kessler.

The parties now move for approval of a settlement agreement.  Joint Mot. for Approval

of FLSA Settlement, ECF No. 25.  District Judge Amon referred the motion for settlement

approval to the undersigned for a report and recommendation.  For the following reasons, the

undersigned respectfully recommends that the District Judge reduce the attorney fees to one-third

of the settlement amount after costs are deducted and otherwise approve the settlement

agreement.

## BACKGROUND

The following facts are derived from Plaintiff's complaint and are accepted as true for the

purposes of this motion.  See Compl., ECF No. 1.  The facts relating to the procedural history are

1

taken from the Court's docket.

## A. Factual Background Regarding Defendants

Defendants Sterling Portfolio Investments, LP and Sterling Portfolio 189, LP are Delaware corporations with their principal places of business in the Eastern District of New York.  Defendant Slope Spaces of Sterling Inc. is a New York corporation with its principal place of business in the Eastern District of New York.  These Defendants operate buildings in Brooklyn.  Compl. ¶¶ 6, 12, 18, ECF No. 1.  Defendants Harvey Stashower and Jerry Kessler had ownership interests in or held shares of Slope Spaces of Sterling Inc., and they exercised control over the day-to-day operations of the business.  They had the powers to hire, fire and set pay rates and terms of employment for Plaintiff and others similarly situated.  Compl. ¶¶ 25, 31, ECF No. 1.

At all times relevant to this action, the corporate Defendants were each an "enterprise participating in commerce" within the meaning of the FLSA, as their (1) employees engaged in commerce or in the production of goods for commerce, or handled, sold, or otherwise worked on goods or materials that have been moved in or produced for commerce; and (2) annual gross volume of sales exceeded $500,000.00.  See 29 U.S.C. § 203(s)(1)(A); Compl. ¶¶ 7-8, 13-14, 19-20, ECF No. 1.

## B. Factual Background Regarding Plaintiff's Work As An Employee Of Defendants

Plaintiff had been working as a building superintendent in Defendants' building at 189 Sterling Place, Brooklyn since 1994 at the time he filed his complaint in this matter.  He estimated that he worked approximately 35 hours per week and was on call for the remaining hours of the workweek.  He was "entirely" unpaid for his work.  Compl. ¶¶ 40-41, 49-50, ECF No. 1.

### C.  Procedural History

On April 13, 2017, the matter was referred for mediation, after which the parties notified the Court that a settlement had been reached and moved the Court for approval of the agreement pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015).  Joint Mot. for Approval of FLSA Settlement, ECF No. 25.  The motion stated that Defendants Sterling Portfolio Investments, LP and Sterling Portfolio 189, LP had not appeared despite being served with process and were in default, so that the settlement agreement only released the other three defendants.  Joint Mot. for Approval of FLSA Settlement 1, ECF No. 25.[1]

The settlement agreement proposed that the three settling Defendants would pay a total of $75,000.00 to resolve Plaintiff's claims against them.  It proposed that 35% of this amount, $26,250.00, would go to attorney fees.  Counsel would also recoup $601.45 in litigation costs from the remaining $48,750.  Plaintiff would take the remainder, $48,158.55.  Joint Mot. for Approval of FLSA Settlement 1-2, ECF No. 25.  Plaintiff's counsel also submitted a billing record (the "Billing Record").  Joint Mot. for Approval of FLSA Settlement Ex. B, ECF No. 25.

The undersigned held a fairness hearing at the conclusion of which the parties were ordered to submit to the Court support for their attorney fees.  Plaintiff's counsel submitted a letter with a redacted copy of the retainer agreement (the "Retainer Agreement") between Plaintiff and his counsel.  Suppl. Att'y Fees Submission Ex. A, ECF No. 32.

### DISCUSSION

### A.  Fair And Reasonable Attorney Fees

Second Circuit precedent requires parties seeking to settle Fair Labor Standards Act

---

[1] The parties recently filed a notice of dismissal of Defendants Sterling Portfolio Investment, LP and Sterling Portfolio 189 LP and adding, with consent of counsel for the Defendants, two new defendants.  Pl.'s Not. Of Dismissal of Certain Defs. And Joinder of Other Defs., ECF No. 45.

("FLSA") claims with prejudice to obtain the approval of a district court or the Department of Labor.  See Cheeks, 796 F.3d 206.  The parties must satisfy the court that their agreement is "fair and reasonable."  Id. at 203.  Where, as here, a proposed FLSA settlement includes the payment of attorney fees, the court must also consider the reasonableness of the fee request.  See, e.g., Flores v. Food Express Rego Park, Inc., 15 Civ. 1410 (KAM) (SMG), 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016).  For this reason, the retainer agreement between plaintiff and his counsel is not dispositive as to a proper division between them of the settlement.

1. Portion Of The Settlement Paid In Attorney Fees To Be Calculated According To Net Recovery After Deduction Of Costs

Plaintiff's counsel requests 35% of the gross settlement amount and for legal costs to be deducted from Plaintiff's 65% take.  Legal costs should rather be deducted from the gross settlement amount, and the proportions going to counsel and client should be calculated according to the remaining net.  See, e.g., D.J. ex rel. Roberts v. City of New York, 11 Civ. 5458 (DCF), 2012 WL 5431034, at *6 (S.D.N.Y. Oct. 16, 2012), report & recommendation adopted sub nom. Roberts v. City of New York, 11 Civ. 5458 (JGK), 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012) (rejecting counsel's request for one-third of the gross settlement because she "improperly calculated the one-third fee she seeks by dividing the gross settlement amount . . . rather than the net amount, after costs.").  In other words, counsel's fee should not be calculated as a proportion of $75,000.00, but rather of $74,398.55, which is the net recovery after costs are deducted from the gross settlement amount.

2. Reducing Attorney Fees To One-Third Of The Settlement

In considering the reasonableness of requested attorney fees, the court may use a range of methods, including the "reasonable hourly rate" method and the "percentage of the fund" method.  See McDaniel v. Cty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010).  Whichever

4

method it chooses, the court is guided by case-specific variables such as: (1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of representation; (5) the fee's relation to the settlement; and (6) public policy considerations.  See Thornhill v. CVS Pharmacy, Inc., 13 Civ. 5507 (JMF), 2014 WL 1100135, at *2 (S.D.N.Y. Mar. 20, 2014) (citing Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000)).  Based on these factors as applied in this case, the undersigned respectfully recommends reducing the attorney fees to one-third of the net recovery.

This report and recommendation addresses counsel's time and labor below where, as Second Circuit precedent encourages, the Court crosschecks the reasonableness of the attorney fee award against a reasonable hourly rate and number of hours billed.  See Goldberger, 209 F.3d 49.  As will be seen, counsel will receive ample compensation for their time and labor at a rate of one-third of the net recovery.  At this stage, it suffices to note that the parties proposed this settlement agreement at an early stage of the litigation process, and the little discovery that took place was not complex.

As to the "complexity and magnitude of the matter," this case – as is true of many FLSA cases – was simple.  See Encalada v. Baybridge Enters. Ltd.,14 Civ. 3113 (BMC), 2014 WL 4374495, at *2 (E.D.N.Y. Sept. 2, 2014), aff'd, 612 F. App'x 54 (2d Cir. Sept. 9, 2015) (noting that although "[t]here are some, relatively few, FLSA cases that raise complex issues like exemptions, coverage, collective action notification, classification, or statutory interpretation . . . the majority of cases . . . could hardly be simpler").  Although Plaintiff did initially seek certification of a class of unnamed plaintiffs, that aspect of the case was not developed beyond the bare assertions in his complaint.  See Compl. ¶¶ 36-39, ECF No. 1.  Plaintiff sought compensation for unpaid work over a 22-year period during which he estimates he worked an

average of 35 hours a week, but defendants countered that Plaintiff was not an employee;

Plaintiff's cause of action was limited to one year; Plaintiff worked three to five – as opposed to

35 – hours a week in exchange for free housing and utilities; and Plaintiff had other employment.

Mot. for Sanction to Compel Disc. Resp., Ex. A: Def.'s Suppl. Resp. to Pl.'s Disc. Req. 1-2, ECF

No. 22.  Plaintiff's counsel regularly represent FLSA clients and have indeed filed complaints in

this Court that, excepting for limited case-specific details, are largely pro forma.  See, e.g.,

Complaint ¶¶ 45-76, ECF 1; Flaherty v. Landnew Corp., 15 Civ. 05719 (RJD) (VMS) (E.D.N.Y.

Aug. 4, 2016); Complaint ¶¶ 38-67, ECF 1; Zaslavsky v. Creative Blizzard Inc., 13 Civ. 3274

(ERK) (VMS) (E.D.N.Y. Jan. 27, 2014); Complaint ¶¶ 18-42, ECF 1, Lawrence v. The Custom

House, 13 Civ. 32183 (ARR) (VMS) (E.D.N.Y. Aug. 07, 2013).  There is not reason to frown on

this practice, so long as complaints are sensitive to the individual facts of each case, but

counsel's ability to recycle large portions of a complaint is further support of the proposition that

this FLSA case was an ordinary one.  There was, in other words, no exceptional complexity or

magnitude to this case.

   That said, further litigation in this matter could have been costly and time-consuming.

The parties are far from agreement on the basic facts and have not yet, for example, completed

discovery, developed issues such as identifying the alleged class of unnamed plaintiffs, or

briefed summary judgment motions.  These factors weigh in favor of approving the settlement.

See, e.g., Marshall v. Deutsche Post DHL, 13 Civ. 1471 (RJD) (JO), 2015 WL 5560541, at *5

(E.D.N.Y. Sept. 21, 2015).  On the other hand, the settlement does not entirely bring the matter

to conclusion, as it only releases three of the five defendants.  Joint Mot. for Approval of FLSA

Settlement 1, ECF No. 25.  Plaintiff has moved for default judgment against the two remaining

defendants, but it is not clear what the outcome of that motion will be.  Mot. for Default J., ECF

No. 34.[2]  The settlement does not, therefore, put to bed the risk of continued litigation and indeed raises the possibility that Plaintiff may seek to "double dip" through further claims against the remaining defendants or that the released defendants will be brought back into the litigation.

I discuss the fifth and sixth factors together.  Plaintiff's counsel requests 35% of the total settlement amount in attorney fees.  Courts in this District have typically approved attorney fees of one-third of the settlement amount in FLSA cases and have been cautious to approve fees in excess of one-third unless special circumstances merit such an increase.  See Lopez v. 41-06 Bell Blvd. Bakery LLC, 15 Civ. 6953 (SJ) (PK), 2016 WL 6156199, at *3 (E.D.N.Y. Oct. 3, 2016) (reducing attorney fees from 37.5% to one-third of the settlement amount and noting that courts in this District "generally accept[]" attorney fees in the amount of one-third of the settlement amount).[3]  Courts in the Southern District of New York have also exercised this caution.  See,

---

[2] See note 1, supra.

[3] See, e.g., Ezpino v. CDL Underground Specialists, Inc., 14 Civ. 3173 (DRH) (SIL), 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (approving attorney fees in the amount of one-third of the settlement and noting that one-third of a settlement is a commonly accepted contingency fee award in FLSA cases in the Second Circuit); Pucciarelli v. Lakeview Cars, Inc., 16 Civ. 4751 (RRM) (RER), 2017 WL 2778029, at *2 (E.D.N.Y. June 26, 2017) (approving attorney fees in the amount of one-third of the settlement and noting that courts in the Second Circuit often approve requests for attorney fees of one-third of a settlement); Karic v. Major Auto. Cos., 09 Civ. 5708 (CLP), 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016) (approving attorney fees in the amount of one-third of the settlement fund and noting that "Courts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund"); Abrar v. 7-Eleven, Inc., 14 Civ 6315 (ADS) (AKT), 2016 WL 1465360, at *3 (E.D.N.Y. Apr. 14, 2016) (approving attorney fees in the amount of one-third of the settlement and citing cases finding that such fee awards are "common" and "regularly approve[d]" in FLSA cases in the Second Circuit); Romero v. Westbury Jeep Chrysler Dodge, Inc., 15 Civ. 4145 (ADS) (SIL), 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016) (approving attorney fees in the amount of one-third of the settlement and citing cases finding that such fee awards are "common" and "regularly approve[d]" in FLSA cases in the Second Circuit); Najera v. Royal Bedding Co., LLC, 13 Civ. 1767 (NGG) (MDG), 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (approving attorney fees in the amount of 20% of the settlement amount and noting that fees of one-third are "commonly accepted in the Second Circuit in FLSA cases"); Calle v. Elite Specialty Coatings Plus, Inc., 13 Civ. 6126 (NGG) (VMS), 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) (approving attorney fees in the amount of one-third of the settlement amount and noting that one-third is a

e.g., Run Guo Zhang v. Lin Kumo Japanese Rest. Inc., 13 Civ. 6667 (PAE), 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015) (reducing an attorney fee award from 37% of the net settlement amount to 33% because a "fee in excess of one-third of the settlement amount disserves the FLSA's important interest in fairly compensating injured plaintiffs"); Martinez v. Gulluoglu LLC, 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (rejecting a fee award representing 36% of the total settlement amount because the case was "relatively straightforward and [had] not progressed beyond preliminary discovery" and because "[b]arring unusual circumstances not present here, courts in this District have declined to award fees constituting more than one-third of the total settlement amount in an FLSA action"); Thornhill, 2014 WL 1100135, at *3 (collecting cases that reduce attorney fees greater than 33% of the settlement value).

The Court is mindful that the FLSA is a "particularly protective statute" with an underlying purpose of ensuring "working [people] a fair day's pay for a fair day's work." Cheeks, 796 F.3d 206-07.  Excessive fees undermine this purpose.  At the same time, "adequate compensation for attorneys who protect wage and hour rights furthers the remedial purpose of the FLSA" by attracting counsel to take on workers' cases.  Henry v. Little Mint, Inc., 12 Civ. 3996 (CM), 2014 WL 2199427, at *15 (S.D.N.Y. May 23, 2014); see Run Guo Zhang, 2015 WL

---

"commonly accepted" fee award in FLSA cases in the Second Circuit); Rangel v. 639 Grand St. Meat & Produce Corp., 13 Civ. 3234 (LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorney fees in the amount of one-third of the settlement agreement and noting that one-third is a "routinely approved" fee award in FLSA cases in the Second Circuit).  But cf., Marshall, 2015 WL 5560541, at *7; Flores v. Mamma Lombardi's of Holbrook, Inc., 104 F. Supp. 3d 290, 306 (E.D.N.Y. 2015) (in the class action context, criticizing case law awarding attorney fees of one-third as often being or citing to proposed orders drafted by counsel rather than judges.  In the present case, the Court has interrogated the facts and policy considerations presented and, on those independent bases, determined that one-third of the settlement is a fair and reasonable attorney fee.  The authorship of the case law establishing one-third as a convention is therefore of less concern.).

5122530, at *4.  It is therefore important to be fair both to plaintiffs and to their attorneys in order to ensure that future plaintiffs also enjoy the benefits of legal representation.

In cases such as this, attorney fees of one-third of the net recovery provide sufficient incentive for attorneys to take them on.  Counsel in this case, for example, would receive $24,799.52 in attorney fees after being awarded one-third of the net recovery—an amount above the cost of attorney fees as calculated by counsel according to the Billing Record.  Joint Mot. for Approval of FLSA Settlement Ex. B, ECF No. 25 (calculating attorney fees of $23,097.80).  In short, attorney fee awards of one-third of the settlement often strike a balance between excessive attorney fees and effective attorney incentives, and thus advance the FLSA's purpose of ensuring that workers receive fair compensation through litigation with the assistance of counsel, if necessary.

Awarding fees on a percentage basis has the benefit of aligning the interests of counsel and client – counsel rises and falls with client – but at times, this approach can also create an incentive for counsel to push for early settlement as their opportunity costs would otherwise rise.  Courts can hedge against this possibly misaligned incentive by exercising caution in awarding attorney fees above one-third of the settlement.  Different cases may require different adjustments to attorney-fee awards in order to better align the interests of counsel and client, but an award of one-third of the settlement after costs achieves the purpose in this quickly resolved case and similar cases.

Public policy favors consistency with respect to attorney fee awards, and similar cases should result in similar fee awards lest the law and its practice in the District lack coherence.  See Mills v. Capital One, N.A., 14 Civ. 1937 (HBP), 2015 WL 5730008, at *16 (S.D.N.Y. Sept. 30, 2015).  Further, the public is more-or-less familiar with the one-third contingency

convention.  This familiarity benefits plaintiffs in the market for a simple solution to their wage-and-hour claims: a straightforward lawyer for a straightforward price for a straightforward FLSA case.  The familiarity also fosters public confidence in the process, thereby increasing public confidence in the judicial system.  The fact that counsel on either side of a settlement has little incentive to oppose attorney fee awards is cause for caution—consistency in attorney fees, in combination with Court discretion to approve or reject them, helps address the concern.

In defense of their attorney-fee request, Plaintiff's counsel points to Flaherty v. Landnew Corp., 15 Civ. 05719 (RJD) (VMS) (E.D.N.Y. August 8, 2016), in which this Court approved their request for 35% of the settlement.  Suppl. Att'y Fees Submission, ECF No. 32.  That case was considerably more complex, including because it involved a viable counterclaim.  Flaherty v. Landnew Corp., 15 Civ. 05719 (RJD) (VMS) (E.D.N.Y. Aug. 8, 2016) Answer, Affirmative Defenses and Am. Countercl. 13-15 ¶¶ 1-24, ECF 17.  Thus, it is not instructive as to appropriate attorney fees in the present case.

3.   Crosschecking The Attorney Fee Award Against A Reasonable Hourly Rate

Second Circuit precedent encourages courts to "crosscheck" attorney fees awarded as a percentage of the fund against the fees that could result were the court instead to award them based on a calculation of a reasonable hourly rate for counsel's work.  See Goldberger, 209 F.3d 50 ("Indeed, we encourage the practice of requiring documentation of hours as a "cross check" on the reasonableness of the requested percentage.").

Although the lodestar calculation is not conclusive, the Second Circuit Court of Appeals has said, in a context where attorney fees would be borne by the defendant, that a district court "may not disregard it entirely" and "must calculate" it.  Millea v. Metro-N. R. Co., 658 F.3d 154, 167-9 (2d Cir. 2011).  This directive should not drive the Court's review in the context of all

FLSA settlements for two reasons.

First, in Millea, the matter went to trial, and the court awarded attorney fees after the jury returned a verdict in favor of the plaintiff.  Id. at 159.  The court thus knew what the damages and attorney fees were.  This is in sharp contrast to a pre-trial FLSA settlement, in which any recovery by the plaintiff is hypothetical and inchoate at best.  In the settlement context, any allocation of money between a plaintiff and counsel is based on a risk analysis as to the plaintiff and attorney's respective possibilities of any recovery.  Thus, most settlements represent approximate justice, rather than the more exact justice that is possible post-trial and post-fee application.  That a lodestar calculation was dispositive in the Millea case does not call for the same analysis in a case in a settlement posture.

Second, the jury in Millea awarded the plaintiff $612.50, and the plaintiff moved for $144,792.00 in attorney fees.  See Millea v. Metro-N. R. Co., 306 Civ. 1929 (VLB), 2010 WL 126186, at *1, 4 (D. Conn. Jan. 8, 2010).  The trial court instead awarded attorney fees in the amount of $204.17, or one-third of the plaintiff's jury award.  Id.  In rejecting this amount, the Second Circuit Court of Appeals focused on the lodestar as a presumptive floor beneath which attorney fees should normally not pass in order ensure that low attorney fee awards do not undermine the purpose of the FMLA's fee-shifting provision.  See, e.g., Millea, 658 F.3d at 169 ("Especially for claims where the financial recovery is likely to be small, calculating attorney's fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes.").  In the present case, in contrast, the parties are not seeking an award of fees, but rather a determination that the fees are fair and reasonable.  There is no concern about any floor for fees in play.

For these reasons, I respectfully submit that a calculation of the lodestar is not required in

all FSLA settlements where fees are paid on a contingency fee basis.  The calculation might be required in some such cases, such as when the lodestar exceeds one-third of the settlement indicating that the settlement amount may need to be adjusted to account for more fees.  It may be that the lodestar may be considered as a check on the fifth <u>Goldberger</u> factor – the fee's relationship to the settlement.

Nonetheless, I provide the lodestar calculation below in the event that the District Court disagrees.

### 4.   Lodestar Calculation

Courts assess a reasonable hourly rate for counsel's services in part by considering the prevailing hourly rates in the district in which the court sits for similar services by lawyers of reasonably comparable skill, experience and reputation.  See <u>Reiter v. MTA New York City Transit Auth.</u>, 457 F.3d 224, 232 (2d Cir. 2006).

The Billing Record provided by Plaintiff's counsel showed 93.5 hours of work and a scattering of "flat" rate charges resulting in fees of $23,097.80.  More specifically, it showed:

1. Ms. Dodson, an attorney, billing for 9.7 hours at an hourly rate of $450 and for one hour of travel at an hourly rate of $200.

2. Mr. Gastman, also an attorney, billing for 50.2 hours at an hourly rate of $325, for two hours of travel time at an hourly rate of $200 and for 0.6 hours of travel time at an hourly rate of $162.50.

3. Ms. Hodges, presumably a paralegal, billing for 9.8 hours at an hourly rate of $125 and two entries in which Ms. Hodges bills a "flat" (as opposed to hourly) rate of $170.

4. A scattering of other "flat" rate charges for activities such as Bates-stamping

12

documents, calendaring meetings and corresponding with the Plaintiff.

The Retainer Agreement provided that attorney fees would be based on the greater of the total Billing Record or 35% of the total amount recovered. It provided for an "hourly rate of $400 for attorney work performed by Penn Dodson." It also provided for fees of "$125 per hour of paralegal, and $35 per hour for administrative work." It did not make provision for increases to these hourly rates. It also did not specify an hourly rate for Mr. Gastman's work. The Billing Record did not show that the $35.00 per hour rate for administrative work was ever applied, even in regard to tasks that cannot be categorized as other than administrative, such as ordering copies of documents and checking the availability of the conference room.

In order to compare the fee request of the attorneys before this Court to the relevant prevailing fees in the District, the Court requires information as to: (1) the skill, experience and reputation of the attorneys before the Court as well as (2) the prevailing rates in the District for similar attorneys. See, e.g., Tarazona v. Rotana Cafe & Rest. Inc., 16 Civ. 76 (PK), 2017 WL 2788787, at *1 (E.D.N.Y. June 27, 2017) ("The party applying for fees . . . must support the hourly rates it claims with, for example, evidence of counsel's expertise and prevailing market rates"); Cardoza v. Mango King Farmers Mkt. Corp., 14 Civ. 3314 (SJ) (RER), 2015 WL 5561033, at *14 (E.D.N.Y. Sept. 1, 2015) ("The fee applicant bears the burden of establishing the reasonableness of the hourly rates requested – in particular, by producing satisfactory evidence that the requested rates are in line with those prevailing in the community"). The parties in this matter did not provide such information. It is therefore within the Court's discretion to determine a reasonable hourly rate. See, e.g., Riley v. City of New York, 10 Civ. 2513 (MKB), 2015 WL 9592518, at *2 (E.D.N.Y. Dec. 31, 2015); Tarazona, 2017 WL 2788787, at *1; Cardoza, 2015 WL 5561033, at *14-16 (finding that it is within a court's discretion to

13

reduce attorney fees when counsel has failed to support a fee request with adequate support).

Counsel has not provided any explanation of the discrepancies in the rates as described in the Retainer Agreement and as charged in the Billing Record.  These include Ms. Dodson's rate, the various rates requested by Ms. Hodges and the apparent failure to apply the $35.00 per hour fee for administrative work.  A reduction in fees because of these failures alone would be merited.  See, e.g., Orlander v. McKnight, 12 Civ. 4745 (HBP), 2013 WL 4400537, at *8 (S.D.N.Y. Aug. 15, 2013) (reducing attorney fees to 30% from one-third because descriptions in counsel's billing record did "not make sense," because counsel failed to provide information regarding their experience, and because counsel had not explained a discrepancy in rates charged in the billing record and those contemplated in the retainer agreement).

Recent decisions in this District have determined that $300-$400 per hour is the reasonable range within which partners or experienced attorneys may place their rates in typical FLSA cases.  See, e.g., Flores v. Food Express Rego Park, Inc., 15 Civ. 1410 (KAM) (SMG), 2016 WL 386042, at *3 (E.D.N.Y. Feb. 1, 2016) ("The prevailing rate for FLSA cases in this district for partners ranges from $300-$400."); Cardoza, 2015 WL 5561033, at *14 (finding that the prevailing hourly rate for partners in this District range from $300-$400); Hui Luo v. L & S Acupuncture, P.C., 14 Civ. 1003 (BMC), 15 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015) (finding that the prevailing hourly rate for partners in this District range from $300-$400); Tacuri v. Nithin Constr. Co., 14 Civ. 2908 (CBA), 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015) (finding that the prevailing hourly rate for partners in this District range from $300-$400).  This range has occasionally been extended to $450 on the upper limit for simple FLSA cases.  See, e.g., Pucciarelli v. Lakeview Cars, Inc., 16 Civ. 4751 (RRM) (RER), 2017 WL 2778029, at *2 (E.D.N.Y. June 26, 2017).  Ms. Dodson's firm's website provides that she has been practicing

law since 2003.  $400 is a reasonable hourly rate for Ms. Dodson's services when considered in light of her 14 years of legal practice and the prevailing rates in this District.  The Court respectfully recommends reducing her fees accordingly.

Recent decisions in this District have determined that $100-$150 and $200-$325 per hour are the reasonable ranges within which junior and senior associates respectively may place their rates in typical FLSA cases.  See, e.g., Flores, 2016 WL 386042, at *3 (junior associates "generally command $100 to $150 dollars per hour"); Hui Luo, 15 WL 1954468, at *2 (finding that the prevailing rates for senior and junior associates range from $200-$300 and $100-$150); Griffin v. Astro Moving & Storage Co., 11 Civ. 1844 (MKB), 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) (noting that recent opinions from courts in this District have found reasonable hourly rates to be between $200-$325 for senior associates and $100-$200 for junior associates); Tacuri, 2015 WL 790060, at *13 ("Opinions from this district have determined that a reasonable hourly rate for a senior associate ranges from $200.00 to $300.00."); Lema v. Mugs Ale House Bar, 12 Civ. 2182 (PKC) (JO), 2014 WL 1230010, at *6 (E.D.N.Y. Mar. 21, 2014) (noting that reasonable hourly rates in this district are between $200-$300 for senior associates and $100-$200 for junior associates).  Mr. Gastman has not provided any information as to his experience, skills or expertise, but his firm's website provides that he graduated from law school in 2011.[4]  This Court respectfully recommends reducing Mr. Gastman's hourly rate to $250.

Recent decisions in this district have determined that $70-$100 per hour is the reasonable range within which paralegals may place their rates in typical FLSA cases.  See, e.g., Tarazona, 2017 WL 2788787, at *1 (reducing the hourly rate of an experienced paralegal down from $125

---

[4] The Court notes that the firm's website says that Mr. Gastman suddenly and unexpectedly passed away at the age of 32 on October 19, 2017.  The Court offers its condolence to his family, friends and colleagues.  Mr. Gastman's biography is available at www.andersondodson.com.

to $75); <u>Perez v. Queens Boro Yang Cleaner, Inc.</u>, 14 Civ. 7310 (SJ) (JO), 2016 WL 1359218, at

*8 (E.D.N.Y. Mar. 17, 2016) (reducing the hourly rate of a paralegal down from $100 to 75$ on

the basis that $75 is a presumptively reasonable rate in this District); <u>Marshall</u>, 2015 WL

5560541, at *9 (reducing the hourly rates of two paralegals down from $85 to $75; <u>Cardoza</u>,

2015 WL 5561033, at *16 (reducing the hourly rates of two paralegals down from $125 to $75

"to bring them in line with the prevailing hourly rates in this District for paralegals assisting with

wage-and-hour cases"); <u>Song v. 47 Old Country, Inc.</u>, 09 Civ. 5566 (SIL), 2015 WL 10641286,

at *3 (E.D.N.Y. Oct. 1, 2015), <u>report and recommendation adopted</u>, 09 Civ. 5566 (LDW), 2016

WL 1425811 (E.D.N.Y. Mar. 31, 2016) (finding reasonable hourly rates for paralegals to range

from $70-$100).  This Court respectfully recommends reducing Ms. Hodgson's hourly rate to

$85.

      The Court respectfully recommends that under the lodestar method, the District Court:

1. Approve 9.7 hours at a rate of $400 per hour for Ms. Dodson.

2. Approve 50.2 hours at a rate of $250 per hour and 2.6 hours of travel time at a rate of $75 per hour for Mr. Gastman.

3. Approve 9.8 hours at a rate of $85 and, in place of the two flat fees of $170, approve two hours at a rate of $85 for Ms. Hodgson.

4. Approve other charges in the Billing Record.

.    These adjustments amount to a total reduction of $4,929.50 from the Billing Record,

leaving $18,168.30 as the lower appropriate lodestar.

      One-third of the net recovery settlement total amounts to $24,799.52.  This is $6,631.22

more than the lodestar, or a multiplier of approximately 1.36 of the lodestar.  Courts in the

Second Circuit have found larger multipliers to be reasonable in FLSA cases.  <u>See</u>, <u>e.g.</u>, <u>Hall v.</u>

ProSource Techs., LLC, 14 Civ. 2502 (SIL), 2016 WL 1555128, at *17 (E.D.N.Y. Apr. 11, 2016) (approving a lodestar multiplier of 2.08); Sakiko Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 438-39 (S.D.N.Y. 2014) (approving a lodestar multiplier of 2.28); In re Lloyd's Am. Tr. Fund Litig., 96 Civ. 1262 (RWS), 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002), aff'd sub nom. Adams v. Rose, 03 Civ. 7011 (DJ) (SMS), 2003 WL 21982207 (2d Cir. Aug. 20, 2003) (approving a lodestar multiplier of 2.09).  Although courts in the Second Circuit have yet to reach strong consensus on a reasonable multiplier in FLSA cases, it suffices in the present case that the multiplier is below, but within the range of, commonly approved multipliers.  But see Sakiko, 58 F. Supp. 3d 438 (arguing that "the lodestar is worthless as a "cross check" on the percentage of recovery method when there is so little agreement as to what constitutes a reasonable multiplier" and welcoming guidance from the Second Circuit Court of Appeals on the issue).

### B.  A Fair And Reasonable Settlement Agreement

In assessing whether a settlement agreement itself is fair and reasonable, a court considers a range of factors including: (1) the complexity, expense and likely duration of litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of defendants to withstand a larger judgment; and (6) the range of reasonableness in light of the best possible recovery and all the risks of litigation.  See, e.g., Volberg v. A.D. Winston Servs., Inc., 11 Civ. 2700 (SLT) (RLM), 2012 WL 1415051, at *1 (E.D.N.Y. Apr. 20, 2012); Misiewicz v. D'Onofrio Gen. Contractors Corp., 08 Civ. 4377 (KAM) (CLP), 2010 WL 2545439, at *4 (E.D.N.Y. May 17, 2010); Peralta v. Allied Contracting II Corp., 09 Civ. 953 (SLT) (RER), 2011 WL 3625319, at *1 (E.D.N.Y. Aug. 1, 2011).

Factors one through four have been discussed in the context of attorney fees.  Although the parties have not addressed the fifth factor, courts have recognized that the mere ability of a defendant to withstand a greater judgment does not suggest that a settlement is unfair and have approved settlement agreements in the absence of evidence as to this factor when other factors weighed in favor of approving the settlement.  See Hall, 2016 WL 1555128, at *8); In re Sinus Buster Prod. Consumer Litig., 12 Civ.2429 (ADS) (AKT), 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014).  In regards to the sixth factor, counsel for the Plaintiff calculated Plaintiff's potential recovery range to be between none and $183,717.27.  Suppl. Att'y Fees Submission, ECF No. 32.  In order to obtain the maximum recovery, Plaintiff would have to prove that he was an employee of the defendants; that he worked 35 hours a week; and that credits or offsets for his apartment and bills, which were covered by the defendants, do not apply.  As stated above, the defendants dispute that Plaintiff was an employee, maintain that he worked only three to five hours a week, and dispute the appropriate offset.  Mot. for Sanction to Compel Disc. Resp., Ex. A: Def.'s Suppl. Resp. to Pl.'s Disc. Req. 1-2, ECF No. 22.  Given these significant factual discrepancies, Plaintiff is not assured of any recovery without significant discovery and trial.  Defendants also argue that the Court lacks jurisdiction.  Def.'s Answer to Compl. 5, ECF, No. 11.  Were this argument to be successful, Plaintiff's complaint might be dismissed and he would have to refile in state court relying only on his state claims.  In that scenario, his claim might be reduced to zero after deductions of credits for rent and utilities as permitted by state law.  The Court considers it unlikely Plaintiff would recover the maximum and possible that he would recover nothing.  The parties negotiated the terms of the settlement at arm's length and agreed to its terms.  For these reasons, the Court finds that the settlement amount of $75,000 is fair and reasonable.  The Court has considered and is satisfied that the rest of the Settlement

Agreement is likewise fair and reasonable.

## CONCLUSION

For the above reasons, the undersigned respectfully recommends that the District Judge award attorney fees of $24,799.52, this being one-third of the settlement amount after deduction of costs, and otherwise approve the settlement agreement.

## OBJECTIONS

Written objections to this Report and Recommendation must be filed with the Clerk of Court and in accordance with the Individual Rules of the District Judge within 14 days of service by electronic filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b).  A failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this report and recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b); see Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Dated:          Brooklyn, New York
                December 13, 2017

                                        *Vera M. Scanlon*
                                         VERA M. SCANLON
                                        United States Magistrate Judge